ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
17 State Street, Suite 820
New York, New York 10004
Tel.: (212) 267-2101
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------X

EMRE EROL on behalf of himself and on  :
behalf of all others similarly situated,

                                          :

                      Plaintiff,

                                          :     **Docket No.:**

    -against-

                                          :     **JURY TRIAL DEMANDED**

4 NY INC. d/b/a ROCCA CAFÉ &
LOUNGE, MUSTAFA ALKAN, MEMET  :
ARSLAN, and HUSEYIN KAYMAK,

                                          :

                     Defendants.

-----------------------------------------------------X

## COMPLAINT

Plaintiff Emre Erol ("Plaintiff"), on behalf of himself and on behalf of all others similarly situated, by and through his attorneys, Robert Wisniewski P.C., as and for his Complaint against Defendants 4 NY Inc. d/b/a Rocca Café & Lounge (the "Corporate Defendant"), Mustafa Alkan ("Alkan"), Memet Arslan ("Arslan"), and Huseyin Kaymak ("Kaymak") (Alkan, Arslan and Kaymak are, collectively, the "Individual Defendants") (Corporate Defendant and the Individual Defendants are, collectively, "Defendants") states as follows:

**NATURE OF THE ACTION**

1.    Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated to recover unpaid wages, unpaid overtime wages, unlawful retention of tips (including gratuities presented as service fees), and liquidated damages, as well as reasonable attorney's fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) ("FLSA"); Articles 6 and 19, and §§ 191 and 198-b of the New York Labor Law ("NYLL"), various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-143, and the common law of the State of New York.

**PARTIES, JURISDICTION AND VENUE**

2.    At all relevant times, Plaintiff Emre Erol, a former employee of the Corporate Defendant, was and is a resident of the State of New York, Kings County.

3.    At all relevant times, upon information and belief, Corporate Defendant 4 NY Inc. was and is a domestic business corporation organized under, and existing by virtue of, the laws of the State of New York, and having its principal place of business at 2712 Emmons Avenue, Brooklyn, NY 11235.

4.    At all relevant times herein, upon information and belief, Individual Defendant Mustafa Alkan was and is a resident of the State of New York, Orange County.

5.    At all relevant times herein, upon information and belief, Individual Defendant Memet Arslan was and is a resident of the State of New York, Nassau County.

6.    At all relevant times herein, upon information and belief, Individual Defendant Huseyin Kaymak was and is a resident of the State of New York, Kings County.

7.      The Individual Defendants are the owners, members, officers, and/or managers of the Corporate Defendant, and as the managing-members are individually responsible for unpaid wages under the New York Business Corporation Law.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 in that they form part of the same case or controversy.

9.      At all relevant times, Defendants engaged in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of the Defendants employ, handle, and sell goods that have been moved in or produced for interstate commerce (food, utensils, chairs, tables, and other items), and the Defendants are thus employers subject to the jurisdiction of the FLSA.

10.     This Court has personal jurisdiction over the Corporate Defendant as it is organized in the State of New York and has its principal place of business herein.

11.     This Court has personal jurisdiction over Alkan in that he is a citizen of, and resides in, the State of New York.

12.     This Court has personal jurisdiction over Arslan in that he is a citizen of, and resides in, the State of New York.

13.     This Court has personal jurisdiction over Kaymak in that he is a citizen of, and resides in, the State of New York.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b), because substantial events giving rise to Plaintiff's claims occurred in this district, and one or more Defendants resides herein.

**JURY DEMAND**

15.     Plaintiff demands a trial by jury of all issues so triable in this action.

**FACTUAL BACKGROUND**

16.     Plaintiff was employed by Defendants from about June 2023 until his termination in or about June 2024.

17.     Defendants own and operate restaurant Rocca Café & Lounge ("Rocca") at 2712 Emmons Avenue, Brooklyn, NY 11235. Rocca is open from 8:30 a.m. to 1:00 a.m. every day of the week.

18.     As part of their business catering to the public, Defendants employed numerous workers such as bus boys and waiters. Owing to Defendants' wage violations, the turnover at the restaurant was very high and Plaintiff believes that in the past six years Defendants employed more than 300 of these workers.

19.     Plaintiff, a dedicated employee at Rocca, endured a year of systematic exploitation at the hands of the restaurant's owners and managers. Defendants engaged in a scheme whereby they paid Plaintiff and all others similarly situated only at the regular rate for hours they worked over 40.

20.     Initially hired as a bus boy, Plaintiff worked tirelessly six days a week, averaging nine hours a day (sometimes more), without even a lunch break. Plaintiff shift was from 5:00 p.m. to about 2:00 a.m., though he occasionally worked past 2:00 a.m. He was paid $15 per hour for the first two months. In total, he worked approximately 54 hours a week and,

in the first two months, was paid approximately $810 per week. He was underpaid by approximately $105 per week.

21.    After the first two months of employment, Plaintiff's hourly wage was raised to $16 per hour. In total, he was paid approximately $864 per week. He was underpaid by approximately $112 per week.

22.    After six months as a bus boy, Plaintiff was promoted to a waiter, a position that promised better compensation through a pay raise of $20 per hour. However, this promotion proved to be another layer of deception. He was paid approximately $1,080 per week. He was underpaid by approximately $140 per week.

23.    The tips, meant to be pooled and distributed fairly according to company policy, were instead confiscated by the Individual Defendants, leaving Plaintiff and his fellow waiters empty-handed. Plaintiff and others were not even allowed to review how much they received in tips.

24.    Defendants also attached a 18% service fee, which in fact was a gratuity in reality, in their checks to customers. However, Defendants did not include the service fees in their gross revenue.

25.    Upon information and belief, Defendants' customers reasonably understand the service fee to be gratuity, or a charge in lieu of gratuity.

26.    The service fee was a gratuity or a "charge purported to be a gratuity" within the meaning of the NYLL.

27.    Defendants unlawfully retained the 18% service fee it collected, and failed to distribute the service fee to its staff, including Plaintiff.

28.    Plaintiff had issues calculating and reviewing how much he was getting paid in wages because for about the first ten months of Plaintiff's employment, he was paid in cash. In about the last two months of his employment, he was paid by check. However, Plaintiff never once received a pay stub, which made it difficult to calculate and confirm his pay. Plaintiff is uncertain that a tip-credit was included in his wage because he was never given any pay stubs.

29.    When Plaintiff dared to question the missing tips and wages – which was on a regular basis – to "Jasmin", the individual who was responsible for handing out pay to its employees, he was met with dismissive responses that she was only there to hand out his pay and that questions should be directed to the Individual Defendants. Plaintiff, however, had a palpable fear of retaliation from the Individual Defendants, who were notoriously abusive towards their employees.

30.    Upon information and belief, Jasmin relayed Plaintiff's complaints to Defendant Alkan, one of the owners of the Corporate Defendant who accused Plaintiff of smoking marijuana and summarily terminated him.

31.    In or about June 2024, Plaintiff observed during his break that his name was not listed in the shift schedule for the following week. Plaintiff asked Alkan why his name was not on the list. Alkan informed Plaintiff that he was terminating his employment because he was smoking marijuana on the job, which was patently false. Plaintiff has never smoked any sort of substance, let alone marijuana, while working.

32.    In total, Plaintiff is owed approximately $14,130.76 in overtime pay, plus missing tips and "service fees."

33.     This pattern of wage theft, denial of tips, and ultimately, retaliatory termination, paints a clear picture of the Defendants' callous disregard for the rights and well-being of their employees. Plaintiff's experience serves as a stark example of the injustices faced by countless similarly situated workers who were lured by the promise of fair compensation, only to be met with exploitation and mistreatment.

34.     The relevant wage order promulgated by the New York Department of Labor requires employers to pay its employees at the rate of 1½ times their regular rate of pay for all hours worked over 40 in a workweek.

35.     At all relevant times, Plaintiff was an employee of the Defendants and Defendants were his employers within the meaning of both the FLSA and the NYLL.

36.     From the beginning of his employment until about June 2024, Defendants engaged in a scheme where they did not pay Plaintiff for all hours he worked. Defendants did not pay Plaintiff for all overtime hours at the proper overtime wage rate.

***Defendants' Failure to Provide Wage Notices and Wage Statements***

37.     Plaintiff, including all others similarly situated, were not given a wage notice when they were hired.

38.     Plaintiff, including all others similarly situated, were also not given wage statements as required by the NYLL.

39.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring

proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

40. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and all others similarly situated. Defendants' conduct actually harmed Plaintiff and all others similarly situated. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate the rights of Plaintiff and all others similarly situated. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendants' failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees. Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

41. Plaintiff and all others similarly situated were never given wage notices and statements, which hindered their ability to calculate how much in wages and tips they were owed by Defendants.

8

42.     The injury of not receiving pay was directly linked to the lack of wage notices and wage statements, as Plaintiff and all others similarly situated were not informed of their entitlement to certain pay.

43.     Proper wage notices and statements would have informed Plaintiff and all others similarly situated of their right to certain pay, enabling them to address any discrepancies and seek appropriate compensation.

44.     Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and all others similarly situated.

***Defendants' Failure to Pay Proper Wages was Willful***

45.     Defendants as employers have certain statutory obligations towards their employees, including paying employees for all of the hours they worked, paying the overtime premium of one-and-a-half times their regular rate for each hour worked in excess of 40 per week, and making, keeping, and preserving proper payroll records.

46.     Defendants were aware of their requirement to pay Plaintiff and all others similarly situated for each hour worked, and to pay the overtime premium of one-and-a-half times their regular rate for each hour worked in excess of 40 per week.

47.     Nevertheless, Defendants failed to pay Plaintiff and all others similarly situated their proper wages, including overtime wages.

48. Defendants knowingly and willfully operated their business with conscious a policy of wage violations which included wage theft, and tip theft in violation of the NYLL.

49. As such, the various violations of the law which are alleged herein were committed intentionally and willfully by Defendants.

50. At a minimum, Defendants failed to take the necessary steps to ascertain their duties with respect to the payment of wages to their employees.

***Facts Relating to the Defendants as Joint Employers***

51. At all relevant times herein, the Individual Defendants were and still are the owners, directors, officers, managing-members, and/or majority shareholders of the Corporate Defendant and have exercised financial and operational control over the Corporate Defendant.

52. Individual Defendant Alkan is listed as a principal of the Corporate Defendant on New York State Liquor Authority Division of Alcoholic Beverage Control filings.

53. At all relevant times herein, the Corporate Defendant was and is controlled by the Individual Defendants.

54. At all relevant times herein, the Individual Defendants conducted business as the Corporate Defendant.

55. At all relevant times herein, the Individual Defendants acted for and on behalf of the Corporate Defendant, with the power and authority vested in them as the owners, officers, agents, and employees of the Corporate Defendant, and acted in the course and scope of their duty and function as the owners, managers, agents, and officers of the Corporate Defendant.

56.     At all relevant times herein, the Individual Defendants directly managed, handled, or were otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or issuing checks and cash to Plaintiff and all others similarly situated.

57.     The Individual Defendants had operational control over the conditions of employment of Plaintiff and all others similarly situated, including their hiring and firing, their work schedule, the rate and method of payment of their wages, and the maintenance of their employment records.

58.     For example, the Individual Defendants hired and fired employees, approved and denied changes in employee wage rates, and directed employee duties at the Corporate Defendant's Rocca restaurant. Alkan also terminated Plaintiff from employment.

59.     At all relevant times herein, the Individual Defendants had operational control over the Corporate Defendant.

60.     As a matter of economic reality, all Defendants are joint employers of Plaintiff and all others similarly situated; and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

## COLLECTIVE ACTION ALLEGATIONS

61.     Plaintiff brings this action on behalf of himself and all other persons who were or are employed by the Corporate Defendant as waiters and bus boys but did not receive the compensation required by the FLSA and the federal wage orders codified in 29 C.F.R. § 552 *et. seq.* in respect to their work for Defendants.

62.     Upon information and belief, this class of persons consists of not less than fifty (50) persons.

63.     There are questions of law and fact common to the class specifically whether the employment of Plaintiff by the Corporate Defendant is subject to the jurisdiction and the wage and overtime requirements of the FLSA and the federal wage orders codified in 29 C.F.R. § 552 *et. seq*. Only the amounts of individual damages sustained by each class member will vary.

64.     Plaintiff and Defendants' other employees are similarly situated insofar as Defendants instituted a policy not to pay Plaintiff and other employees for all regular and overtime hours worked, tips, and "service fees."

65.     Plaintiff brings FLSA claims for relief herein on behalf of himself individually and all persons similarly situated as a collective action pursuant to the FLSA, in respect to all claims that Plaintiff and all persons similarly situated have against Defendants as a result of Corporate Defendant's violation under the FLSA and the federal wage orders codified in 29 C.F.R. § 552 *et. seq*.

## <u>CLASS ACTION ALLEGATIONS UNDER RULE 23</u><br><u>FOR VIOLATIONS OF THE NYLL</u>

66.     Plaintiff brings this action on behalf of himself and all others similarly situated who were or are employed by Defendants as waiters and bus boys but did not receive the compensation required by the NYLL. The proposed class is as follows:

a.      All non-exempt employees of Defendants who were or are employed as waiters and bus boys at Defendants' restaurant located at 2712 Emmons Avenue, Brooklyn, NY 11235 within six years and seven months from the date of the filing of this action (to account for Governor Andrew Cuomo's orders tolling the New York statutes of limitations by seven months).

12

b.    Excluded from the proposed class are those employees of Defendants:

    i.    Who are exempt under the NYLL, including without limitation Defendants' corporate officers, managers and administrative personnel; and

    ii.    Who have signed a valid general release as part of a separate court or administrative proceedings.

67.    This class of persons consists of several hundred persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P. 23(a)(1). The exact number of members of the class who were and are waiter and bus boys, their identity and addresses can be easily ascertainable from Defendants' payroll and time records and other surveillance and productivity data in Defendants' possession.

68.    Moreover, damages suffered by each putative member may be so small that prosecuting an individual claim may not be economical or practicable.

69.    Plaintiff is a member of the class.

70.    There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically:

a.    whether the employment of Plaintiffs and other workers by the Defendant is subject to the jurisdiction and the wage and overtime requirements of the NYLL and the wage orders promulgated thereunder; and

b.    whether Defendants' failure to pay their workers the proper wages, overtime wages, and unlawful retention of tips, violated NYLL's minimum wage, overtime wage, promised wage, and tip retention.

c.     Only the amounts of individual damages sustained by each class member will vary.

71.    The claims of Plaintiff are typical of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of Defendants. The damages sought by Plaintiff are typical of the damages that may be sought by the class.

72.    Plaintiff will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

73.    In addition, Defendants have acted or refused to act on grounds that apply generally to the class, so that declaratory relief is appropriate respecting the class as a whole under Fed. R. Civ. P. 23 (b)(2).

74.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed. R. Civ. P. 23 (b)(3).

75.    Plaintiff brings the third, fourth, fifth, and sixth claims for relief herein on behalf of himself individually and on behalf of all persons similarly situated as a class action pursuant to Rule 23, in respect to all claims that Plaintiff and all persons similarly situated have against Defendants for violations of the NYLL and the wage orders codified in 12 N.Y.C.R.R. §§ 137-143.

### FIRST CLAIM FOR RELIEF
### (Unpaid Wages, Overtime Wages, and Unlawful Retention of Tips Under the FLSA)
### *Against all Defendants*

76.    Plaintiff repeats and realleges each and every previous allegation as if fully set forth herein.

77.    Plaintiff and all others similarly situated are persons covered by, and/or intended to benefit from, the provisions of the FLSA with respect to their work for the Corporate Defendant.

78.    Plaintiff, on behalf of himself and on behalf of all others similarly situated, brings this claim for relief pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 206 and § 207, and the Wage Orders issued under the FLSA at 29 C.F.R. § 500 *et seq*., under which Plaintiff and all others similarly situated were entitled to a minimum wage and an overtime hourly wage of time and one-half their regular hourly wage for all hours worked in excess of forty hours per week.

79.    Pursuant to the FLSA, Plaintiff and all others similarly situated were entitled to certain overtime wages, which the Corporate Defendant intentionally and willfully failed to pay in violation of such laws.

80.    Plaintiff and all others similarly situated regularly worked in excess of 40 hours per week for the Corporate Defendant, but did not receive the proper overtime wages to which they were entitled for all hours worked.

81.    Plaintiff, on behalf of himself and on behalf of all others similarly situated, brings this claim for relief pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 203(m)(2)(B), which provides: "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

15

82.     Pursuant to the FLSA, Plaintiff and all others similarly situated were entitled to certain tips (including gratuities presented as service fees), which the Corporate Defendant intentionally and willfully retained in violation of such laws.

83.     Accordingly, Plaintiff, on behalf of himself and on behalf of all others similarly situated, seeks a judgment for unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, Plaintiff and all others similarly situated, along with an award of liquidated damages, interest, attorneys' fees, and costs, as provided for by the FLSA.

## SECOND CLAIM FOR RELIEF
### (FLSA Retaliation)
*Against all Defendants*

84.     Plaintiff repeats and realleges each and every previous allegation previously set forth.

85.     Plaintiff and all others similarly situated are persons covered by and intended to benefit from the provisions of the FLSA.

86.     Throughout Plaintiff's employment, he routinely complained to Jasmin, the individual responsible for handing out pay to the Corporate Defendant's employees, that they were not paid for all hours worked at the proper wages.

87.     Corporate Defendant knew of such complaints but ignored them, and continued to refuse to pay for every hour Plaintiff worked and/or terminated Plaintiff.

88.     In committing such retaliatory acts, the Corporate Defendant violated Section 15(a)(3) of the FLSA, which prohibits the discharge of any employee for complaining about an FLSA violation.

89. Wherefore, Plaintiff, on behalf of himself and on behalf of all others similarly situated, seeks damages, sums to be determined at trial, as well as liquidated damages, interest, and reasonable attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### (Unpaid Wages, Overtime Wages, and Unlawful Retention of Tips Under the NYLL)
### *Against all Defendants*

90. Plaintiff repeats and realleges each and every previous allegation previously set forth.

91. Plaintiff and all others similarly situated are persons covered by, and/or intended to benefit from, the provisions of the New York Labor Law with respect to their work for Defendants.

92. Pursuant to the New York Labor Law Articles 6 and 19, Labor Law §198, and the Wage Orders issued under New York Labor Law at 12 N.Y.C.R.R. §§ 137-143, Plaintiff and all others similarly situated were entitled to certain regular wages, and overtime wages, all of which Defendants intentionally and willfully failed to pay in violation of such laws.

93. Plaintiff and all others similarly situated regularly worked in excess of 40 hours per week for Defendants, but did not receive the proper wages and overtime wages to which they were entitled for all hours worked.

94. NYLL § 196-d provides that "[n]o employer . . . shall . . . retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

95. Plaintiff and all others similarly situated were never presented with a tip pool and were never paid any tips (including gratuities presented as service fees) in which they were entitled.

96.     Wherefore Plaintiff, on behalf of himself and on behalf of all others similarly situated, seeks a judgment against all Defendants for unpaid regular, overtime wages, and certain tips which should have been paid, but were not paid, pursuant to the New York Labor Law and the Wage Orders issued thereunder and the other provisions of the Labor Law; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiff and all others similarly situated, along with an award of liquidated damages, attorneys' fees, interest and costs as provided under New York Labor Law §198 and §663.

### FOURTH CLAIM FOR RELIEF
### (NYLL Retaliation)
### *Against all Defendants*

97.     Plaintiff repeats and realleges each and every allegation previously set forth.

98.     Plaintiff and all others similarly situated are persons covered by and intended to benefit from the provisions of the NYLL.

99.     Throughout Plaintiff's employment, he routinely complained to Jasmin, the individual responsible for handing out pay to Defendants' employees, that they were not paid for all hours worked at the proper wages.

100.    Defendants knew of such complaints but ignored them, and continued to refuse to pay for every hour Plaintiff worked and/or terminated Plaintiff.

101.    In committing such retaliatory acts, Defendants violated Section 215 of the NYLL, which prohibits the discharge of any employee for complaining about an NYLL violation.

102. Wherefore, Plaintiff, on behalf of himself and on behalf of all others similarly situated, seeks damages, sums to be determined at trial, as well as liquidated damages, interest, and reasonable attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Wage Notice Violation Under the NYLL)
### *Against all Defendants*

103. Plaintiff repeats and realleges each and every allegation previously set forth.

104. New York Labor Law § 195.1 mandates as of 2015 that, at the time of hire and when a wage rate is changed, each employee employed by Defendants receive for signature a Wage Notice, which had to contain the following wage information: (i) the basis of the employee's wage rates e.g., by the hour, shift, day, week, salary piece commission or otherwise; (ii) the overtime rate of pay, if the employee is subject to overtime regulations; (iii) whether the employer will claim allowances such as tips, meals, and/or lodging against the minimum wage; (iv) the employer's name and any "doing business as" names; (v) the employer's address and mailing address, if different; and (vi) the employer's telephone number.

105. Plaintiff and all others similarly situated never received for signature the Wage Notice and never received any other paystubs or documents which might show the information required by NYLL § 195.1.

106. Accordingly, Plaintiff, on behalf of himself and on behalf of all others similarly situated, seeks damages allowed by the statute for himself as well as attorney fees, costs and disbursements.

19

## SIXTH CLAIM FOR RELIEF
### (Wage Statement Violation Under the NYLL)
### *Against all Defendants*

107.    Plaintiff repeats and realleges each and every allegation previously set forth.

108.    Pursuant to New York Labor Law § 195.3 and the Wage Order §142-3.8, employers must provide an accurate wage statement with each payment of wages. Wage statements must include, among other information "the dates of work covered by that payment of wages; name of employee; address and phone number of employer; rate or rates of pay and basis thereof" and, where applicable, the overtime rate of pay.

109.    In violation of the NYLL and the Wage Order, Defendants did not furnish Plaintiff and all others similarly situated with wage statements that show the employee's rate or rates of pay, the number of hours worked, or recorded the proper pay rate for the overtime hours of Plaintiff and all others similarly situated.

110.    Plaintiff, on behalf of himself and on behalf of all others similarly situated, seeks damages allowed by the statute.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiff, on behalf of himself and on behalf of all others similarly situated, demands a trial by jury and judgment against all Defendants as follows:

A.    A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

20

B.      An award of damages in an amount to be determined at trial, plus pre-judgment

interest, to compensate Plaintiff and all others similarly situated for all monetary and/or

economic damages;

C.      An award of liquidated damages pursuant to the FLSA and NYLL for underpaid and

illegally retained amounts; and

D.      An award of costs that Plaintiff has incurred in this action, as well as the reasonable

attorneys' fees of Plaintiff to the fullest extent permitted by law.

Together with such other and further relief that the Court deems just and proper.

Dated: New York, NY
       April 21, 2025

                                    ROBERT WISNIEWSKI P.C.

                                    By: */s/ Robert Wisniewski*
                                    Robert Wisniewski
                                    *Attorneys for Plaintiff*
                                    17 State Street, Suite 820
                                    New York, NY 10004
                                    (212) 267-2101